The defence then proceeded to show that the money levied was applicable to prior executions, and offered in evidence sundry justice's executions against John H. Ellegood.

*Mr. Saulsbury* objected to the executions as evidence, unless the judgments were produced.

*Mr. Cullen* insisted.

*The Court* required the production of the judgments. The plea is that the sheriff was not guilty, because the defendant had no goods but such as were covered by prior valid and binding executions.— The validity of these executions depends on the judgments, which may appear to have been satisfied, or reversed, or dead. These ought to be produced, as the foundation of the executions.

The defence produced the judgments. One of them was dated in 1839, and the levy remained undisposed of until 1844.

*Mr. Saulsbury* asked the court to charge that a levy in 1839, not disposed of until 1844, had lost its lien.

*Bayard,* contra.—The execution does not lose its preference, unless fraud be shown. A stay does not deprive an execution of its priority. [3 *Harr. Rep.* 484.] A stay of execution does not make it lose its lien, unless it is kept running for fraudulent purposes.

Verdict for defendant.

*Saulsbury,* for plaintiff.

*McFee, Houston, Cullen* and *Bayard,* for defendant.

---

A. CURREY & N. DAVIS, trading as CURREY & DAVIS *vs.* MARY WARRINGTON, Executrix of Alexander Warrington, deceased.

The provision, Dig. 225, that "obligations or contracts by several persons shall be joint and several, unless it is otherwise expressly stipulated," does not extend to partnership obligations, which are joint and not several, and must be enforced against the surviving partner.

THIS was an action on a bill drawn by Currey & Davis, on A. J. Warrington, for $71 83, accepted by them and taken up by the drawers; and on a promissory note of Alexander and John War-

rington, who were partners in business, to Currey & Davis, for $200. The bill and note were drawn by the Warringtons, in the course of their business.

*Mr. Layton* objected, that as this suit was against the executrix of a deceased partner, for a partnership transaction, the other partner still living, it could not be maintained. The bill and note do not raise a promise by one party to pay the partnership debt, until resort has been had to the surviving partner, unless the firm is shown to be insolvent; when resort may be had to the several partner *in equity.* [*Law. Lib.* 294-5 ; *Cary on Partners.* 118.]

*Mr. Houston* did not controvert this position as at common law, but raised the question whether it is not varied by our act of assembly : whether the legislature has not thought proper to avoid the circuitous and expensive remedy in chancery, and give a remedy at law against the executors of the deceased partner. The act of assembly, [*Dig.* 224, section 11,] makes every obligation or contract made by several persons joint and several, unless it is otherwise expressly stipulated. It was, therefore, in the option of the plaintiffs in this case, to treat this note and accepted bill (for an accepted bill is a note,) as a several obligation; if this provision extends to partners, which is submitted, it does. There is nothing at least in the act to show that it does not.

*Mr. Layton* replied that the act did not apply to partners ; nor could the executor of a deceased joint obligor be joined with the survivor.

*The Court* charged the jury that the act of assembly does not extend to partnership obligations, which are joint and not several and survive to and against the survivor ; and directed a verdict for the defendant.

                                                  Verdict for defendant.

*Houston,* for plaintiff.
*Layton,* for defendant.